

ENTERED
12/10/2018

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| REZA  AHMADI; aka AHMADI | § | CASE NO: 17-34134 |
| Debtor(s) | § | |
| | § | CHAPTER  13 |

## MEMORANDUM OPINION

Reza Ahmadi filed his chapter 13 bankruptcy petition on July 3, 2017, with the assistance of attorney Reese W. Baker from the law firm Baker & Associates.  (*See* ECF No. 1).  Ahmadi unsuccessfully proposed multiple plans and amendments in an attempt to confirm a chapter 13 plan.  Ultimately Ahmadi's bankruptcy case was dismissed pursuant to the Chapter 13 Trustee's motion on February 27, 2018.  (ECF No. 68).

On March 17, 2018, Baker filed his chapter 13 fee application which sought payment of $10,317.00 in attorney's fees and $477.55 for reimbursable expenses incurred in Ahmadi's bankruptcy case.  (*See* ECF No. 72).  Ahmadi objected to Baker's fee application, claiming that Baker's fees are unreasonable in light of the work performed and that Baker had failed to properly appraise Ahmadi of the amount of fees incurred.  (ECF No. 78 at 1–2).  Ahmadi's objection seeks to reduce Baker's fees to a total recovery of $3,000.00.  (ECF No. 78 at 2).

Ahmadi's objection is granted in part.  Baker's fees are reduced by $3,988.50 to $6,328.50, Baker is additionally entitled to payment of $477.55 for expenses incurred during Ahmadi's case.

## Background

The present dispute between Ahmadi and Baker precipitated from Ahmadi's 2017 chapter 13 bankruptcy case.  However, the origins of this dispute trace back to 2009 when Ahmadi obtained a loan for $36,200.00 to pay delinquent payroll taxes owed to the IRS for

Ahmadi's business, Intelligent Office Products. *Ahmadi v. Glenvest, LLC*, 731 F. App'x 343, 343–44 (5th Cir. 2018). This loan was secured by a lien on Ahmadi's home located in Houston, Texas. *Id.* at 343. The ownership interest in the loan was eventually transferred to Glenvest, which sent Ahmadi a Notice of Demand and Intent to Accelerate on March 3, 2009, after Ahmadi failed to make required payments. *Id.* at 343–44.

On December 23, 2013, Glenvest sent Ahmadi a second Demand and Intent to Accelerate, which led to Glenvest obtaining an equity foreclosure in Texas state court. *Id.* at 344. As a pro se plaintiff, Ahmadi sued Glenvest in Texas state court, arguing that Glenvest's foreclosure was fraudulent because it failed to disclose the 2009 Demand and Intent to Accelerate and that Glenvest's foreclosure was barred by the statute of limitations after Glenvest failed to foreclose within four years of sending the 2009 demand. *Id.* Glenvest removed the case to federal district court and filed motions for summary judgment and for judgment on the pleadings on the basis that its 2009 communication was an *intent* to accelerate rather than an *actual acceleration* of the debt owed and did not trigger the statute of limitations. *Id.*

The federal district court granted Glenvest's motion to dismiss and awarded Glenvest judgment for non-judicial foreclosure. *Id.* Ahmadi filed a Rule 60(b) motion for reconsideration which the federal district court denied. *Id.* Ahmadi then appealed the federal district court decision to the Fifth Circuit. Ahmadi elected to proceed pro se throughout the legal proceedings before the federal district court and Fifth Circuit.

While his appeal was pending, Glenvest moved closer to foreclosing on Ahmadi's home. (August 30, 2018 Hearing at 3:48 p.m.). Shortly before Glenvest's foreclosure was finalized, Ahmadi met with Baker to determine whether filing for bankruptcy could save his home from foreclosure. (August 30, 2018 Hearing at 3:48 p.m.).

After the initial meeting, Baker and Ahmadi proceeded with the bankruptcy case, filing a chapter 13 petition with the Court on July 3, 2017.  Ahmadi's bankruptcy schedules included $242,323.00 in secured claims against his home, which he valued at $211,386.00.  (ECF No. 11 at 10, 14).  His schedules also disclosed an unliquidated claim against Glenvest which stated: "[F]or wrongful foreclosure and fraud.  Debtor estimates recovery in excess of $150,000."  (ECF No. 11 at 9).

Ahmadi's first proposed chapter 13 plan sought to pay his debt over 60 months through payments of $1,800.00 for the first 47 months with a balloon payment of $125,000.00 in the 48th month.  (ECF No. 12 at 1).  The Chapter 13 Trustee moved to dismiss Ahmadi's case on August 31, 2017.  Glenvest objected to the proposed plan based both on Ahmadi's failure to cure arrearages owed on Glenvest's loan and on the feasibility of the proposed $125,000.00 payment on the 47th month of the plan.  (ECF No. 25 at 2–3).  Ahmadi and Baker sought a continuance to amend his proposed chapter 13 plan, which the Court granted on September 26, 2017.  (ECF No. 27).  An amended chapter 13 plan was proposed on October 21, 2017, which lowered the balloon payment on the 47th month to $100,000.00 and increased the payments to the IRS and the secured lenders.  (ECF No. 33 at 1).  The Court again denied confirmation of this proposed plan on November 28, 2017 for failure to comply with the federal district court's orders.  (ECF No. 39).

The Trustee filed a second motion to dismiss Ahmadi's case based on Ahmadi's failure to confirm a chapter 13 plan.  (ECF No. 44).  This led to the proposal of a third amended chapter 13 plan which eliminated the large balloon payment in favor of larger periodic payments interspersed over the 60 months of the plan.  (ECF No. 48 at 2).  At this time, Baker also filed a

motion to lift the automatic stay to allow Ahmadi to proceed with his pro se appeal of the federal district court's judgment for Glenvest. (ECF No. 50).

After a contested confirmation hearing on February 27, 2018, the Court denied confirmation of Ahmadi's third amended chapter 13 plan and dismissed his bankruptcy case. (ECF Nos. 68, 69). On July 16, 2018, the Fifth Circuit issued its per curiam opinion which denied Ahmadi's appeal and affirmed the federal district court's ruling granting Glenvest judgment for non-judicial foreclosure. *Ahmadi v. Glenvest, LLC*, 731 F. App'x 343, 343–44 (5th Cir. 2018).

After the dismissal of Ahmadi's bankruptcy case, Baker filed his chapter 13 fee application, which sought payment of $10,317.00 for attorney's fees and $477.55 for expenses on March 17, 2018. (ECF No. 72 at 2). Ahmadi objected to Baker's requested fees, arguing that the fees requested were unreasonable based on the work performed and that Baker failed to apprise him of the amount of attorney's fees incurred during his case. (ECF No. 78 at 2).

The Court held a hearing regarding Baker's requested fees and expenses on August 30, 2018, during which both Baker and Ahmadi provided testimony. The parties presented starkly contrasting views of the events that led to Ahmadi's bankruptcy filing.

Baker claimed that Ahmadi arrived in his office with the foreclosure on his home imminent, which presented him with a narrow timeline to be brought up to speed and act in the case. (August 30, 2018 Hearing at 3:48 p.m.). Baker also described Ahmadi's insistence regarding both the necessity of filing for bankruptcy as well as the viability of his Fifth Circuit appeal and that he proceeded with the filings according to his client's wishes. (August 30, 2018 Hearing at 3:48 p.m.). Baker claimed that new information subsequently emerged regarding Ahmadi's debts which required significant time and extensive amendments to his proposed

plans. (August 30, 2018 Hearing at 3:49 p.m.). Baker further purports that his client fee agreement fully informed Ahmadi of his duty to pay all fees and expenses incurred in his case which Ahmadi agreed to when he signed the document. (August 30, 2018 Hearing at 3:24 p.m.).

Ahmadi claims that he went to Baker's office for assistance facing the dire situation of losing his home and that Baker advised him to proceed with the bankruptcy filing and failed to inform him of alternative measures such as mortgage modifications. (August 30, 2018 Hearing at 3:33 p.m.). Additionally, Ahmadi points to the absence of his initials in key provisions of Baker's fee agreement documentation such as Section 5.3 – Determination of Attorney's Fees and Section 8.11 – Refiling to Try to Discharge Debts as evidence that he did not assent to Baker's fees. (ECF No. 78 at 11, 22). Ahmadi further stated that Baker did not fully explain the fee arrangement based on the short timeline the pending foreclosure placed the parties under. (August 30, 2018 Hearing at 4:21 p.m.). Ahmadi also claimed that the work Baker performed on his case was done in his presence and the time quoted in Baker's fee application amounts to an exaggeration of the true time spent. (August 30, 2018 Hearing at 3:37 p.m.).

The Court took this matter under advisement at the conclusion of the August 30, 2018 hearing.

## Jurisdiction

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). Pursuant to 28 U.S.C. § 157(a), this proceeding has been referred to the Bankruptcy Court by General Order 2012-6.

## Analysis

The appropriate compensation for professionals employed by the estate is determined by examining three tests which together allow the court to determine the proper amount of

attorney's fees earned in a case: 11 U.S.C. § 330(a)(3), the lodestar method, and the *Johnson* factors. *CRG Partners Group, LLC v. Neary (In re Pilgrim's Pride Corp.)*, 690 F.3d 650, 656 (5th Cir. 2012).

Section 330(a)(3) states that the reasonable compensation awarded to professionals is determined by examining all relevant factors including:

> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

The *Johnson* factors enumerate twelve considerations which determine whether requested fees are reasonable or not. The twelve factors are:

> (1) The time and labor required; (2) The novelty and difficulty of the questions; (3) The skill requisite to perform the legal service properly; (4) The preclusion of other employment by the attorney due to acceptance of the case; (5) The customary fee; (6) Whether the fee is fixed or contingent; (7) Time limitations imposed by the client or other circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation, and ability of the attorneys; (10) The "undesirability" of the case; (11) The nature and length of the professional relationship with the client; (12) Awards in similar cases.

*Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

The lodestar method determines the amount of compensation by multiplying the number of hours spent by the prevailing hourly rate in the community for similar work. However, the lodestar method also grants the court discretion to adjust the lodestar amount upwards or downwards based on its assessment of the *Johnson* factors. *Neary*, 690 F.3d at 656.

*11 U.S.C. § 330*

Although Ahmadi disputes the amount of time Baker spent working on his bankruptcy case, Baker's fee application describes in detail the work he and his staff performed in Ahmadi's case. (ECF No. 72 at 2). Baker's fee application also included detailed time records on the work performed, hours spent, and hourly rate. (*See* ECF No. 72-4). Despite Ahmadi's concerns about the time spent on his bankruptcy case, no evidence or testimony elicited during the August 30, 2018 hearing brought into question the veracity of Baker's quoted hours or work performed. (*See generally* August 30, 2018 Hearing). Additionally, Baker's billing records reflect that over half the work in Ahmadi's case was performed by associates and paralegals at Baker's firm whose hourly rates were significantly less than Baker's own, reducing the overall charges to Ahmadi. (ECF No. 72 at 2). Accordingly, the Court finds that the time spent on Ahmadi's case, the rates charged, reasonable skill, and customary compensation all weigh in favor of granting Baker's requested fees.

However, § 330(a)(3)(C) also requires that the Court examine "whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title." The first and second proposed chapter 13 plans which Baker created and filed on Ahmadi's behalf each required a significant balloon payment of $125,000.00 and $100,000.00, which presumably would be paid after Ahmadi's successful prosecution of his claims against Glenvest. (*See* ECF Nos. 25, 33). Even Ahmadi's

third amended plan, which ultimately led to the dismissal of his bankruptcy case, would have required a large yearly payment ranging from $15,000.00–$50,000.00. (ECF No. 48 at 2). In all, Baker and his staff spent approximately 18.5 hours preparing these plans and an additional 8.2 hours responding to motions to dismiss, confirmation objections, and other contested motions arising from these plans. (ECF No. 72 at 1).

In the face of a district court ruling against Ahmadi, it was unrealistic to expect this Court to ignore those orders. At a minimum, the plans should have provided for level payments (perhaps with escrowed funds) to assure compliance with both the District Court's judgment and § 1325(a)(5)(iii) of the Bankruptcy Code (requiring equal monthly payments on secured claims).

Moreover, a careful reading of the district court's brief order and final judgment issued on May 4, 2017, should have informed Baker of the difficulties Ahmadi faced in winning his appeal. (Case No. 16-CV-01730; ECF No. 20 at 1–2). The Court finds credible Baker's testimony that Ahmadi was confident in his appeal and adamant that they proceed. (August 30, 2018 Hearing at 4:24 p.m.). However, this testimony must also be reconciled with the reality of Ahmadi's suit, which although colorable, faced long odds of achieving success on the merits. *See Ahmadi v. Glenvest, LLC*, 731 F. App'x 343, 343–44 (5th Cir. 2018).

In Baker's practice before the Court, he has presented disputes similar to those Ahmadi claimed against Glenvest, and given his experience with similar situations, was undoubtedly aware of the difficult road Ahmadi faced to prevailing on appeal. Accordingly, Baker's choice to base all of Ahmadi's proposed plans on Ahmadi's successful recovery against Glenvest predictably failed to render a beneficial service to the estate as required by § 330(a)(3)(C).

*Johnson Factors*

Many of the *Johnson* factors overlap with the factors established in § 330(a)(3) and are described in detail above, such as the requisite skill, time and labor required, time limitations imposed by the circumstances, results obtained, and experience of the attorneys. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

The *Johnson* factors also examine the customary fee and whether such fee is fixed or contingent. *Id.* Ahmadi's objection specifically questions the reasonableness of Baker's fee and his surprise when he learned of the requested amounts. (ECF No. 78 at 2). In response, Baker testified that Ahmadi was apprised of his potential fees through his signed fee agreement and failed to complain about the amount of fees incurred during the process. (August 30, 2018 Hearing at 4:24 p.m.). However, the fee agreement itself reflects Ahmadi's reservations regarding the fee arrangement, with Ahmadi refusing to sign certain provision related to the determination of attorney's fees. (ECF No. 78 at 11). Furthermore, Baker's argument that Ahmadi bore the burden of challenging requested fees during the bankruptcy is undercut by the fact that Baker failed to inform Ahmadi of his fee total until seven months of work had already been performed. (August 30, 2018 Hearing at 4:24 p.m.). Even if the fee agreement authorized billing at a later date, Baker cannot use that fact to simultaneously argue that Ahmadi should have objected to his fees earlier when Ahmadi was never told the amount of fees. (August 30, 2018 Hearing at 4:24 p.m.).

Baker's failure to consistently advise Ahmadi regarding the billed amounts incurred in his case also weighs against awarding Baker his full requested fee amount.

*Lodestar Adjustment*

Having set forth the aspects of § 330(a)(3) and the *Johnson* factors which caution against awarding Baker the full amount of his requested attorney's fees, the lodestar method grants the Court significant discretion to adjust the lodestar upwards or downwards as necessary. *CRG Partners Group, LLC v. Neary (In re Pilgrim's Pride Corp.)*, 690 F.3d 650, 656 (5th Cir. 2012).

Baker's failure to properly advise Ahmadi of the fees incurred during the prosecution of his bankruptcy case, and Baker's willingness to base the success of Ahmadi's bankruptcy case on the unlikely outcome of a successful Fifth Circuit appeal justifies a lodestar downward adjustment. The Court denies Baker's fees related to the preparation of Ahmadi's doomed proposed chapter 13 plans and amendments. Baker's fee application reflects a total of 3.2 hours of attorney work and 16.4 hours of paralegal work on schedules, plans and amendments. (ECF No. 72 at 1). As detailed in the table attached as Appendix A, Baker's requested attorney's fees are reduced by $3,988.50 to $6,328.50.

*Expenses*

Baker's fee application also sought to recover $477.55 in reimbursable expenses incurred in Ahmadi's case. This amount consists mostly of filing fees as well as legal research, copies, and mailings. (ECF No. 72 at 2). Ahmadi's objection did not challenge the requested expenses and no testimony presented at the August 30, 2018 hearing called into question the expenses Baker claimed in his fee application. As a result, Baker is entitled to recover the full amount of requested expenses.

## Conclusion

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **December 10, 2018.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE

## Appendix A

### Disapproved Fees Related to Chapter 13 Plans and Amendments

| Date | Services Rendered | Amount |
|---|---|---:|
| 07/03/2017 | Schedules, Plan-Final review and approval of documents for filing petition | $146.00 |
| 07/14/2017 | Schedules, Plan – Meeting with client to review and sign schedules and plan | $150.00 |
| 07/14/2017 | Postpetition Client Consultations – meeting with client on structure plan, payments in plan, review of documents, other issues | $365.00 |
| 07/18/2017 | Schedules, Plan – final review and approval of schedules and plan | $146.00 |
| 07/19/2017 | Schedules, Plan – Prepared all documents for ECF filing. Filed schedules and plan | $37.50 |
| 07/21/2017 | Postpetition Client Consultations – meeting with client on structure plan, payments in plan, review of documents, other issues | $292.00 |
| 10/05/2017 | Postpetition Client Consultations – phone conference with client regarding result of confirmation hearing, possible amendments, and appointment to meet with attorney | $30.00 |
| 10/13/2017 | Schedules, Plan – Review of plan Amendments for Accuracy and attorney's fees | $30.00 |
| 10/13/2017 | Postpetition Client Consultations – meeting with client, review of Glenvest appeal and litigation issues, review of Statis case, review of chapter 13 plan, changes to plan | $620.50 |
| 10/18/2017 | Schedules, Plan – Review of amended plan and attorney's fees | $30.00 |
| 10/21/2017 | Schedules, Plan – Redlining and electronic filing of Amended Plan | $30.00 |
| 11/09/2017 | Schedules, Plan – Communications with Chapter 13 Trustee's Office regarding Glenvest claim, treatment of claim, Amended Plan, possible Objection to Claim, and upcoming confirmation hearing (0.2); review of last plan filed, schedules, Glevest claim (0.2) | $60.00 |
| 11/20/2017 | Schedules, Plan – Reviewed case for confirmation | $25.00 |
| 11/21/2017 | Schedules, Plan – review of special provisions | $109.50 |
| 11/27/2017 | Schedules, Plan – review of amendments to plan, changes | $167.50 |
| 11/27/2017 | Amendments – communications on amendments to plan (.1); amended plan to update attorney's fees and special provision (.1); review amendments to plan (.3); phone conference with client regarding amended plan and objection to proof of claim (.1); electronic communication with client regarding signatures and plan payment (.1); prepared amended plan for filing (.3); filed amended plan (.1) | $137.50 |

| Date | Description | Amount |
|---|---|---|
| 12/19/2017 | Chapter 13 Trustee Contact – phone conference with Trustee's office regarding denied confirmation and refiling amended plan | $12.50 |
| 01/10/2018 | Chapter 13 Trustee Contact – reviewed and replied to electronic communications with Trustee regarding amended plan | $12.50 |
| 01/11/2018 | Postpetition Client Consultations – Phone conference with client regarding upcoming confirmation hearing, possible amendments, and attorney communications; review of hearing notes and last plan filed | $60.00 |
| 01/12/2018 | Amendments – reviewed issues with denied plan, need for new motion for special provisions, new amended plan to include all amounts owed to Glenvest, and motion to lift stay to resolve case in Fifth Circuit Court | $37.50 |
| 01/12/2018 | Schedules, Plan – Review of proof of claims, Glenvest arrears, last plan filed, schedules, hearing notes, possible Motion for Relief, possible Amendments and Appeal | $60.00 |
| 01/12/2018 | Amendments – review of status, amend plan for Glenvest claims | $219.00 |
| 01/16/2018 | Schedules, Plan – Review of proof of claims, trustee payments, upcoming confirmation hearing, possible amendments, last plan filed, schedules, possible Motion for Relief, and objection to claim | $75.00 |
| 01/17/2018 | Postpetition Client Consultations – communications with client regarding upcoming hearing, Amendments, and possible motion for relief | $45.00 |
| 01/18/2018 | Amendments – plan amendments for appeal issues and payments | $146.00 |
| 01/19/2018 | Schedules, Plan – Prepared Amended Plan (0.4); communications with client regarding amended plan; trustee payments, income, appointment to meet attorney, and status of lawsuit (0.3) | $105.00 |
| 01/22/2018 | Postpetition Client Consultations – meeting with client, review of payment schedule, develop exhibit and witness list, motion to lift stay on appeal, payment plan amendments, amendments to schedules for ITS stock, other documents and preparation for hearing | $839.50 |
| | **Total Reduction** | **$3988.50** |